## IN THE COURT OF APPEALS OF IOWA

No. 14-1303
Filed October 1, 2014

**IN THE INTEREST OF K.W.,**
**Minor Child,**

**C.W., Father,**
Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Annette L. Boehlje, District Associate Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Theresa A. Staudt of Esser & Isaacson, Mason City, for appellant.

Thomas J. Miller, Attorney General, Janet L. Hoffman, Assistant Attorney General, Carlyle D. Dalen, County Attorney, and Nichole Benes, Assistant County attorney, for appellee.

Crystal L. Ely of Young Law Office, Mason City, for mother.

David A. Grooters of Pappajohn, Shriver, Eide & Nielsen P.C., Mason City, attorney and guardian ad litem for minor child.

Considered by Danilson, C.J., and Vogel and Bower, JJ.

**BOWER, J.**

A father appeals the termination of his parental rights.

## I.     BACKGROUND FACTS AND PROCEEDINGS

The child, K.W., is three years old and was born in 2011.  The Department of Human Services (DHS) began working with the family in 2010 when services began in the home due to the parents' drug use around K.W.'s older sibling.  The matter was closed prior to K.W.'s birth, but was reopened in 2012 when the mother was admitted to the hospital for a drug overdose.  At that time both parents admitted to drug use.  K.W. was first removed from the parents' home on April 2, 2013 after the parents were subjected to drug testing following a report of drug use in a hotel parking lot.  Since the removal, K.W. has been placed in several foster homes.  An order was entered on April 26, 2013, adjudicating K.W. a child in need of assistance (CINA) pursuant to Iowa Code sections 232.2(6)(c)(2) and 232.2(6)(n) (2013) based on the parents' use of illegal drugs and their efforts in attempting to thwart a DHS drug test.

An uncontested dispositional hearing was held on June 6, 2013.  K.W. remained in foster care, and the parents were allowed supervised visits.  The court found it would be contrary to the welfare of the child to return the child to the parents' home, and ordered continued foster care.  The case permanency plan adopted at the hearing ordered the parents to participate in substance abuse treatment, follow all recommendations, submit to random drug testing, allow no drug users or drug deals in the family home, and maintain or seek

housing and employment. Review and permanency hearings were held in the following months.

A termination hearing was held on June 13, 2014. The court provided an exhaustive overview of the parents' problematic past. Concerning the father's participation in substance abuse treatment, the court noted the father had only attended group meetings and failed to participate in the other services offered. The father missed multiple drug tests in January and February 2014. He claimed he was at work and unable to attend the drug testing. The court notes the father was told multiple times in written orders and orally a missed drug test would be construed as a positive test. To his credit, he provided a negative drug test on February 25, 2014. The father also returned a negative drug test in May 2014, but DHS was concerned the test had been altered. The court found the father did not effectively engage in drug counseling and treatment and found the father's excuses for not attending treatment unpersuasive. With respect to scheduled visitation with K.W., the father missed approximately half of the visits. DHS required the father to call the day prior to the scheduled visitation to confirm his visit. He would often fail to make the confirmation call. The father also failed to follow through on many scheduled phone calls with K.W. During a home visit in February, a Family Support Worker found a Plexiglas sheet and magazines covered in a crystal substance, needles, and sex toys. Finally, the court noted the father had attended a few mental health counseling sessions but failed to engage in treatment.

The court found clear and convincing evidence sufficient to terminate the father's parental rights pursuant to Iowa Code sections 232.116(1)(e) and 232.116(1)(h).[1]

## II.    STANDARD OF REVIEW

Our review of termination decisions is de novo.  *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).  We give weight to the juvenile court's findings, especially assessing witness credibility, although we are not bound by them.  *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).  An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under section 232.116.  *Id.*  Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence.  *Id.*

## III.    DISCUSSION

Iowa Code chapter 232 termination of parental rights follows a three-step analysis.  *P.L.*, 778 N.W.2d at 39.  The court must first determine whether a ground for termination under section 232.116(1) has been established.  *Id.*  If a ground for termination has been established, the court must apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in termination of parental rights.  *Id.*  Finally, if the statutory best-interest framework supports termination of parental rights, the court must consider if any of the statutory exceptions set out in section 232.116(3) weigh against the termination of parental rights.  *Id.*

---

[1] The mother's parental rights were also terminated under Iowa Code sections 232.116(1)(e) and 232.116(1)(h).  The mother did not appeal.

**A.  Grounds for Termination**

When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the order on any ground we find supported by the record.  *D.W.*, 791 N.W.2d at 707.  Iowa Code section 232.116(1)(e) provides that termination may be ordered when there is clear and convincing evidence the child is three years of age or younger, the child has been adjudicated a CINA, the child has been removed from the physical custody of the parent for a period of at least six consecutive months, and "the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so."  Significant and meaningful contacts can include:

> [T]he affirmative assumption by the parents of the duties encompassed by the role of being a parent.  This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

Iowa Code § 232.116(1)(e).

Here, the father claims the court erred in its application of the third factor of 232.116(1)(e), because DHS did not make reasonable efforts for reunification. In support of his claim, the father lists the various positive changes he has made in his life.  These include stable employment since February 2014, stable housing, negative drug tests, a new positive romantic relationship that began in January 2014.  He asserts he has accepted responsibility for his past bad acts. The father blames DHS for complicating the scheduling of visitations.  He also

complains the court "lumped" his behaviors with those of the mother, which further hindered reunification with his child.

The court placed an emphasis on the father's dishonesty and his tendency to shift the blame to others:

> The father does not take responsibility for his actions. Even at the termination proceeding, the father would not accept any responsibility for anything that happened in this matter. It was all the mother's fault or the FSRP provider's. He did not understand or was confused, and it was not his obligation to seek clarity. In sum, nothing that happened in this case was the father's fault and thus, he feels no burden to amend his behavior. And so, he has not amended his behavior.

Even if we ignore the father's issues with honesty and blame shifting—although we note these issues could also support termination—the record shows he does not prioritize his child. Since April 2014 he has missed eight scheduled visitations with his child. Since that same time he has missed multiple scheduled phone calls with his child. These missed appointments were purely a result of the father's indifference or inability to place the child first in his life. For these reasons, we find the father has failed to exhibit "a genuine effort to maintain communication with the child," and thus satisfying the third factor of 232.116(1)(e)(3). We find clear and convincing evidence the father has not Maintained significant and meaningful contact with his child during the previous six months, pursuant to section 232.116(1)(e)(3); termination is appropriate.

## B. Best Interests of the Child.

Even if a statutory ground for termination is met, a decision to terminate must still be in the best interests of a child after a review of section 232.116(2). *P.L.*, 778 N.W.2d at 37. In determining the best interests of the child, we give

primary consideration to "the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional conditions and needs of the child."  *See* Iowa Code § 232.116(2).

For the reasons we listed above and the facts in the background section, we believe it is in the best interests of K.W. to terminate the father's parental rights.

## IV.     CONCLUSION

There is clear and convincing evidence that grounds for termination exist under section 232.116(1)(e), termination of the father's parental rights is in the child's best interests pursuant to section 232.116(2), and no consequential factor weighing against termination in section 232.116(3) requires a different conclusion.  Accordingly, we affirm termination of the father's parental rights.

**AFFIRMED.**